UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SHERRY LYNN B.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 25-11154<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 10, 12)**

## I. Introduction

Plaintiff Sherry Lynn B. appeals an unfavorable decision of Defendant Commissioner of Social Security (Commissioner) ruling on her application for supplemental security income (SSI) under the Social Security Act (SSA). Both parties consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c) and move for summary judgment. ECF No. 8; ECF No. 10; ECF No. 12.

After a hearing below, during which plaintiff and a vocational expert (VE) testified, an administrative law judge (ALJ) found:

1. Plaintiff had the severe impairments of degenerative disc disease; labral tear of the left hip, status post fusion; post-traumatic stress disorder (PTSD); major depressive disorder; panic disorder; social anxiety disorder; and obsessive-compulsive disorder. ECF No. 6-1, PageID.42.

2. Plaintiff had no impairments that met or medically equaled a listed impairment. *Id*., PageID.44.

3. Plaintiff had the residual functional capacity (RFC) to perform light work "except she can occasionally climb ramps or stairs. She can understand, remember and carry out simple instructions, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public." *Id.*, PageID.46.

Relying on the testimony of the VE, the ALJ found that there were jobs in significant numbers that plaintiff could perform, including positions as a cleaner, sorter, and packer. *Id*., PageID.55. Thus, the ALJ found plaintiff not disabled under the SSA. *Id.*

## II. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[1] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

[1] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Among other arguments, plaintiff asserts that the ALJ erred by finding her fibromyalgia non-severe and by failing to address those impairments in the remainder of his analysis. ECF No. 10, PageID.1716-1717. An ALJ must consider at step two of the sequential analysis whether a claimant has

a severe impairment. 20 C.F.R. § 416.920(a)(4). A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (cleaned up). "Establishing a severe impairment at Step Two is considered a *de minimis* hurdle, to screen out totally groundless claims." *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) (cleaned up).

An ALJ's error in considering an impairment non-severe is harmless if that impairment is considered in the remaining steps of the decision. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (cleaned up). Conversely, failure to consider non-severe impairments in the remaining steps is reversible error. "Once one severe impairment is found, the combined effect of all impairments must be considered" when determining the RFC, "even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) ("[W]e will consider the limiting effects

of all your impairment(s), even those that are not severe, in determining your [RFC]."); Social Security Ruling (SSR) 96-8p.

Here, the ALJ erred in finding plaintiff's fibromyalgia non-severe and failed to consider the limiting effects of that impairment in the remainder of the opinion. So the Court will remand this matter for further consideration.

**B.**

The Court begins by describing the precedent related to claims of disability based on fibromyalgia.

Generally, ALJs are required to evaluate subjective symptoms, including complaints of pain, by confirming that objective medical evidence of the alleged condition exists and determining whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ then assesses any work-related limitations by determining the intensity, persistence and limiting effects of these symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *6.

An ALJ's subjective symptom evaluation should not be disturbed "absent compelling reasons." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the

record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). An ALJ must explain the bases of her subjective symptom evaluation determination, and the reviewing court should not be left to speculate about the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015).

The nature of fibromyalgia complicates this analysis. *Cooper v. Comm'r of Soc. Sec.*, 13-cv-11883, 2014 WL 4606010, at *16 (E.D. Mich. June 17, 2014). In fibromyalgia cases, objective evidence is often unavailing, and overemphasis on it is inappropriate. *Rogers*, 486 F.3d at 244-46; *Shahin v. Saul*, 18-cv-12939, 2020 WL 38931, at *3 (E.D. Mich. Jan. 3, 2020). Courts in this circuit have routinely remanded matters "because of the ALJ's undue emphasis on the lack of objective evidence." *Cooper*, 2014 WL 4606010, at *16 (collecting cases). Normal findings are not necessarily inconsistent with fibromyalgia, so considerations of normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion are "simply beyond the point." *Madinger v. Comm'r of Soc. Sec.*, No. 2:16-CV-882, 2019 WL 5091958, at *6 (S.D. Ohio Oct. 11, 2019) (cleaned up).

Thus, when "objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally

limiting effects of symptoms" of the claimant's fibromyalgia, an ALJ must consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012); *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399 (6th Cir. 2016). And because the lack of objective evidence does not undermine a claim involving fibromyalgia, the opinions of treating medical providers are more critical to the evaluation of whether the claimant is disabled. *Cooper*, 2014 WL 4606010, at *18 ("The diminished potency of traditional evidence has heightened the importance of treating sources in fibromyalgia cases.").

For applicants, like plaintiff, who filed after March 27, 2017, their treating physicians' opinions are not accorded controlling weight. *See* 20 C.F.R. § 404.1520c. But treating physicians' opinions about a claimant with fibromyalgia should continue to carry special weight even under the new rules given the lack of relevance of objective evidence. *Beckrow v. Saul*, No. 19-12834, 2021 WL 900558, at *3 n.2 (E.D. Mich. Feb. 18, 2021). When a claimant alleges disability because of fibromyalgia, courts should

remain critical of ALJ decisions that rely more on the record-review opinions of state agency experts than on opinions from treating physicians, especially rheumatologists. *Id.*

**C.**

As the ALJ recognized, the regulations require that "[a]cceptable medical evidence" support a diagnosis of fibromyalgia, "such as a history of widespread pain in all quadrants of the body, and at least 11 tender points on physical examination." ECF No. 6-1, PageID.43 (citing SSR 12-2p, 2012 WL 3104869, at *2-3). Rheumatologists are specialists in fibromyalgia and their diagnoses of the disease carry more weight. *Rogers,* 486 F.3d at 245. Here, rheumatologist Joshua P. June, D.O., diagnosed plaintiff with fibromyalgia on October 5, 2021, about five months before she filed her SSI application. ECF No. 6-1, PageID.39, 361-366. Dr. June identified 14 tender joints in both shoulders, both hands, and both knees. *Id.*

The ALJ noted plaintiff's diagnosis of fibromyalgia and that she "routinely complained of fatigue and weakness." ECF No. 6-1, PageID.43. But the ALJ found that plaintiff's fibromyalgia was not a severe impairment, reasoning that her (1) "neurological examinations were largely normal"; (2) that she exhibited "normal gait and movement of all extremities"; (3) that

the record reflected not "history of widespread pain in all quadrants of the body"; (4) that plaintiff had "no proper tender point findings…after the alleged onset date"; and (5) that plaintiff "required no hospitalizations or emergency treatment related to this condition." *Id.* This reasoning conflicts with longstanding precedent and SSR 12-2p, which addresses the evaluation of fibromyalgia.

First, the Sixth Circuit has long recognized that "fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (cleaned up). Thus, plaintiff's normal gait and movement of extremities are "simply beyond the point." *Madinger*, 2019 WL 5091958, at *6 (cleaned up). And while the ALJ denied that the record showed that plaintiff had widespread pain in all quadrants, Dr. June noted she had joint pain in her hands, knees, and shoulders. ECF No. 6-1, PageID.361, 364-365. Indeed, plaintiff's handwriting deteriorated because of "pain and cramping," and were stiff during periods longer than four hours. *Id*.

The ALJ also violated SSR 12-2p by treating as irrelevant tender point findings made before the alleged onset date. According to that ruling, ALJ's "generally request evidence for the 12-month period before the date of application unless we have reason to believe that we need evidence

from an earlier period, or unless the alleged onset of disability is less than 12 months before the date of application." SSR 12-2p, 2012 WL 3104869, at *4. Dr. June's diagnosis of fibromyalgia and his description of the supporting evidence predated the application filing date *only by about five months*. Within the relevant period described in SSR 12-2p, plaintiff's primary care physician and Dr. June documented her pain, swelling, cramping, and paresthesia in her hands and fingers, for which she wore splints and braces. *See* ECF No. 6-1, PageID.373, 464, 476, 481, 484, 489, 498, 989, 1133, 1136, 1381. Those symptoms were not caused by injury. *Id*.

The ALJ's reliance on plaintiff's lack of hospitalization or emergency treatment likewise lacks merit, and he provided "no reason to believe that even severe, disabling fibromyalgia would result in emergency or hospital care." *England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 8114219, at *12 (E.D. Mich. July 11, 2016), *adopted,* 2016 WL 5939288 (E.D. Mich. Oct. 13, 2016). The Sixth Circuit has in fact found that "more 'aggressive' treatment is not recommended for fibromyalgia patients." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011); *see also Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013) (Posner, J.) (criticizing

an ALJ for fixating on a claimant's failure to seek emergency treatment for her alleged physical impairment).

Finally, although the ALJ acknowledged that plaintiff "repeatedly complained of fatigue and/or weakness," he failed to address whether plaintiff's fatigue resulted in exertional limitations. *Id.*, PageID.43. That failure violated SSR 12-2p, which identifies "fatigue" as a symptom that "may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories." 2012 WL 3104869, at *6. Time and time again, courts have noted that fatigue is a symptom of fibromyalgia. *See, e.g.*, *Rogers*, 486 F.3d at 247 ("Claims based upon fibromyalgia are of this type as the complaints of pain, stiffness, and fatigue associated with the condition are the source of the alleged disability."); *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011) (stating that the ALJ's "oversight" in identifying fibromyalgia as a severe was "gaping given that Kalmbach's disability application is premised primarily upon the pain and fatigue she experiences as a result of her fibromyalgia."); *Lawson v. Astrue*, 695 F. Supp. 2d 729, 735 (S.D. Ohio 2010) ("According to a recent Merck Manual entry, fibromyalgia is 'a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread

tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep.'").

Plaintiff also had an independent sleep study that ruled out sleep apnea as the etiology of her "excessive sleepiness." ECF No. 6-1, PageID.544-546. The sleep study was ordered after plaintiff complained in late 2021 about sleeping 16 to 18 hours a day. *Id*., PageID.464, 467. The ALJ failed to address whether plaintiff's excessive sleepiness and fatigue would "cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities," as required to determine whether her fibromyalgia was a severe impairment. SSR 12-2p, 2012 WL 3104869, at *5.

In sum, substantial evidence does not support the ALJ's findings that her fibromyalgia failed to clear the *de minimis* hurdle of establishing severe impairments. *Higgs*, 880 F.2d at 862; *Singleton*, 137 F. Supp. 3d at 1033.

Like the ALJ in *Rogers*, the ALJ focused exclusively on the lack of objective medical evidence to evaluate plaintiff's fibromyalgia. ECF No. 6-1, PageID.43. Doing so squarely violated the holdings of *Rogers* and other precedent going back more than 30 years. *Rogers*, 486 F.3d at 243; *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio

2003); *Kalmbach*, 409 F. App'x at 864; *Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 715 (S.D. Ohio 2019). And the ALJ's error is reversible.

**D.**

As noted, the ALJ's error in assessing the severity of plaintiff's fibromyalgia would have been harmless had he considered them in the remaining steps of the analysis. *Nejat*, 359 F. App'x at 577. But he did not.

The Court recognizes that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Even so, the ALJ must still provide a "logical bridge" between the RFC determination and the medical record as a whole, including non-severe, determinable impairments. *See Anthony R. v. Comm'r of Soc. Sec.*, No. 23-12344, 2024 WL 3881474, at *3-4 (E.D. Mich. Aug. 20, 2024) (remanding after an ALJ failed to discuss non-severe impairments in the RFC determination); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In his RFC analysis, the ALJ altogether failed to address the record describing plaintiff's fatigue and her pain, swelling, cramping, and paresthesia in her hands and fingers. ECF No. 6-1, PageID.46-54.

In his RFC analysis, the ALJ detailed the records addressing plaintiff's limitations from back, cervical, and hip pain, and her mental

illnesses, and he addressed the objective evidence (or lack thereof) supporting those impairments. *Id*. "As discussed above, however, the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant." *Kalmbach*, 409 F. App'x at 864. With a diagnosis of fibromyalgia, the ALJ must consider the plaintiff's subjective complaints*. Id.*

As the ALJ acknowledged, plaintiff testified at the hearing that "sitting causes pain and is uncomfortable, and typing or working on a computer causes her hands to cramp." *Id.*, PageID.47. She described her "constant pain that fluctuates from manageable to unbearable," and said that her pain levels range from "six or seven" to "eight or nine." *Id.* Plaintiff explained that "[o]n a typical day, she may start doing something but have a difficult time finishing because her hands cramp, and she cannot open things." *Id.*, PageID.48. She "does not cook or grocery shop," and when "she tries to clean, [ ] just using a spray bottle causes her hands to cramp. *Id.* Plaintiff also testified that "she spends about three-quarters of her day lying down." *Id.* Under SSR 12-2p, "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the ALJ must "consider all of the evidence in the case record, *including the person's daily activities*…." 2012

WL 3104869, at *5 (emphasis added). But here, the ALJ failed to address whether plaintiff's testimony about her daily activities was credible or whether it supported her claims of disability fibromyalgia.

SSR 12-2p also requires that an ALJ consider the claimant's allegations of "widespread pain and other symptoms associated with [fibromyalgia], such as fatigue." 2012 WL 3104869, at *6. The ALJ here "did not expressly address the effect of [plaintiff's] fibromyalgia-related fatigue on her ability to function." *Hampton v. Comm'r of Soc. Sec.*, No. 16-CV-12135, 2017 WL 4236541, at *4 (E.D. Mich. Sept. 25, 2017). As noted, plaintiff had a sleep study after she complained in late 2021 about sleeping 16 to 18 hours a day. *Id.*, PageID.464, 467. The ALJ failed to address how her excessive sleepiness affected her functional abilities.

In his RFC analysis, the ALJ also omitted consideration of Dr. June's findings that plaintiff suffered from morning stiffness, joint pain in 14 joints (10 of which in her hands), tenderness to palpation, and joint swelling. ECF No. 6-1, PageID.361, 364-365. Plaintiff testified in detail that hand cramps impacted her inability to do basic tasks with her hands, including typing on a computer and using a spray bottle. *Id.*, PageID.47-48. The ALJ addressed none of this. In discussing plaintiff's rheumatoid arthritis, the ALJ pointed out that imaging of plaintiff's hands in October 2021 was

"largely unremarkable except for some minor arthritic changes of the first metatarsophalangeal joint," and that she had "normal range of motion" in some of her examinations. ECF No. 6-1, PageID.43. But those objective findings are irrelevant to whether fibromyalgia affected her functional limitations.

"The ALJ's failure to mention, let alone analyze, all of this evidence in the record in accordance with agency regulations and controlling case law persuades us that his decision is not supported by substantial evidence and remand is required." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013). The Court thus finds that the ALJ's decision is not supported by substantial evidence. In particular, the record belies the ALJ's conclusions that plaintiff has the RFC to perform the assessed light work. On remand, the ALJ must reconsider the record as a whole.

## III. Conclusion

The Court **GRANTS** plaintiff's motion for summary judgment (ECF No. 10), **DENIES** the Commissioner's motion for summary judgment (ECF No. 12), and **REMANDS** this matter for further consideration under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 23, 2026

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 23, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager